**THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TERRELL ROBERTS**<br>**Plaintiff,**<br><br>**v.**<br><br>**EQUIFAX INFORMATION SERVICES, LLC**<br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **JURY TRIAL DEMANDED**<br><br>**Case No.** |

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

## INTRODUCTION

COMES NOW the Plaintiff Terrell Roberts ("Roberts" or "Plaintiff"), an individual consumer, by Counsel, and for his Complaint against Defendants, Equifax Information Services, LLC (collectively referred to as "CRAs"). Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681-1681x et seq.

2. Inaccuracies and errors plague consumer reporting. Estimates of serious errors range from 3 to 25%. The most recent and definitive FTC study on

errors and credit reports found that 21% of consumers had verified errors in their credit reports, 13% had errors that had affected their credit scores, and 5% had errors serious enough to be denied or pay more for credit. *See* FTC Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003 (2012).

3. This means that 10 million Americans face serious errors in their credit reports that could result in them being denied or paying more for credit.

4. To give consumers the opportunity to verify the accuracy of data maintained by CRAs, the FCRA requires CRAs to disclose certain information to the consumer upon request. *See* 15 U.S.C. § 1681g; *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2213 (2021) ("As the plaintiff's note, the disclosure and summary-of-rights requirements are designed to protect consumers interest in learning of any inaccuracies in their credit files so that they can promptly correct the files before they are disseminated to third parties.")

## JURISDICTION AND VENUE

5. Jurisdiction of this court arises under 15 U.S.C. § 1681(p) and 28 U.S.C. § 1331.

6. Venue in this District is proper in that the Defendant regularly conducts business in the State of Oklahoma.

## III. PARTIES

7. Plaintiff Terrell Roberts is a natural person residing in Oklahoma, OK.

8. Plaintiff Terrell Roberts is a consumer as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a, (b) and (c).

9. Upon information and belief, Equifax Information Services, LLC is a Georgia corporation duly authorized and qualified to do business in the State of Oklahoma.

10. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

## IV. FACTS OF THE COMPLAINT

11. On or about March 16, 2025 Roberts obtained copies of his consumer credit disclosures from Equifax Information Services, LLC, through www.annualcreditreport.com.

Equifax

12. Equifax was also required under 15 U.S.C. § 1681g(a) to clearly and accurately disclose to Roberts all the information in his file, subject to the same limited exception regarding truncation of the Social Security number.

13. Equifax's disclosure omitted critical information contained within his credit file, thereby failing to meet this requirement.

14. The omitted data included inaccurate information, re-aged data, payment history, incomplete account details and failed to furnisher the source(s) of the personal information of Plaintiff.

15. The Accounts with known inaccuracies or incomplete data included: Jefferson Capital LLC among others.

16. These errors and omissions were numerous and included, but were not limited to, the following in the Equifax disclosure: Incomplete account numbers, incomplete credit limits, Terms Durations, Frequency, Activity Designator, Date of Last Payment, Actual Payment Amount, Scheduled Payment Amount, Date of Last Activity, Date Maj Del 1st Reported, Change Off Amount, Deferred Pay Start Date, Balloon Pay Amount, Balloon Pay Date, Status, Original Creditor Name and Personal Information etc.,

17. The following trade-line inaccurate, incomplete, errors and omissions were included but were not limited to:

18. Jefferson Capital LLC: *2663 full account number, available credit, payment history, credit limit, date of last activity, actual payment amount, date of last activity, activity designator, deferred payment start date, balloon payment date, term duration, date of last payment, scheduled payment amount, charge off amount, balloon payment amount, date closed, original creditor name **all information described above is omitted.**

## PERSONAL INFORMATION SECTION

19. A CRA "does not originate the underlying data" in the credit report, but rather "gathers information provided by data furnishers and makes that information available to consumers." *Roberts v. Trans Union, LLC*, CIV-25-00887-JD (W.D. Okla. Jul 30, 2026).
20. Identification: Terrell D Robert failing to mention the source of the information therefore not giving all of the information within the file.
21. Social Security Number: xxxx2166 Plaintiff never requested that the social security number be truncated and Defendant failed to mention the source of the information therefore not giving all of the information within the file.
22. Contact Information: 5420 SE 86th St Oklahoma City, OK 73135 Date Reported March 08, 2025, 4702 SE 44th St Apt H Oklahoma City, OK 73135 Date Reported May 07, 2019, 5116 SE 51st St Oklahoma City, OK 73135 November 25, 2019, 5757 W Hefner Rd Apt 1123 July 23, 2018, 1212 NE 18th Ct Moore OK 73160 March 19, 2018, 14606 Waterloo Falls Rd Arcadia OK 73007 March 07, 2025, 8701 Cedar Ridge Dr Oklahoma City, OK 73111 March 04, 2014, 1209 NE 43rd St Oklahoma City, OK 73111 March 04, 2014, 11425 N Lincoln Blvd Oklahoma City, OK 73114 November 24, 2010 Defendant failed to mention the source of the information therefore not giving all of the information within the file.

23. Sources of the information in the consumer's file Section 1681g(a)(2) provides that every consumer reporting agency must, upon the consumer's request and with limited exceptions that are not relevant here, "clearly and accurately disclose to the consumer" "[t]he sources of the information" that is contained in their consumer's file. Mintun contends that Experian violated § 1681g(a)(2) when it failed to adequately disclose "in plain English" the sources for her name-and-address information in her consumer's file. She further contends that Experian disclosed this information using "cryptic, numeric codes [that] deprived [her] of the ability to determine [the information's] accuracy or "dispute inaccurate information." Like in Slyzko, Experian's three arguments for why this claim fails are without merit. Thus, Mintun may proceed on her claim that Experian violated § 1681g(a)(2) when it failed to disclose the sources of her name-and-address information in plain English. *Mintun v. Equifax Info. Servs.,* Case No.: 2:19-cv-00033-JAD-NJK (D. Nev. Mar 30, 2020).

24. Here Plaintiff could not dispute the source of the information.

25. The FCRA requires that Equifax clearly and accurately disclose all information in a consumer's file upon request from such consumer.

26. Although the debt collectors are misclassifying the collection accounts as credit accounts when they report their accounts to Equifax, the debt

collectors are reporting that they are debt buyers and identify an original creditor.

27. Despite receiving information on a purported original creditor, Equifax did not disclose the information on the original creditor to the Plaintiff.

28. According to the Consumer Data Industry Association ("CDIA"), the industry leading organization for furnishers and consumer reporting agencies, the "original creditor is required for collection agencies" and "must be present each time the account is reported."

29. Further, the CDIA states the "purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports."

30. Continuing, the CDIA notes that "[w]ithout the original creditor names, consumers may not know what the accounts represent."

31. Thus, Equifax knows that it is required to report the original creditor's name and that its' failure to do so is causing the consumer to not recognize the account.

32. Notably, the two other national consumer reporting agencies, Experian and Trans Union, have abided by the CDIA's edicts and implemented procedures that assure the original creditor name is included in all collection accounts that appear in their reports.

33. In lawsuits against Equifax, the consumer reporting agency has described a procedure to assure maximum accuracy that reviews all METRO II data for format errors like "data with mandatory fields that are blank" or "for anomalies in content (such as a creditor who normally reports 10% of its accounts as in collection suddenly reporting 90% of its accounts in collection" prior to the data being loaded to the database.

34. If Equifax had made the same investment in its procedures that were made by both Experian and Trans Union, then Equifax's credit reports would not be littered with collection accounts that do not contain the original creditor's name.

35. Nonetheless, Equifax continues to knowingly omit the original creditor's name because Equifax does not want to incur the costs of implementing a procedure to correct the debt collector's misclassification of the account.

36. While Equifax does not want to incur the cost of correcting the problem, Equifax continues to accept information from these unreliable debt collectors because the debt collectors are a significant source of income for Equifax.

37. Equifax has conducted a cost-benefit analysis on whether to incur the costs to fix the error or to apportion a small percentage of those would-be costs

to litigating claims brought by aggrieved consumers that fell victims to its conduct.

38. In choosing to litigate rather than correct, Equifax was motivated to adopt and act on an interpretation of section 1681g that gave it grounds to litigate a defense against the claims that consumers were bound to bring against Equifax for its intentional violations of the FCRA.

39. Because the language in section 1681g and the obligations of a credit reporting agency that arise from the said language are unambiguous, to give cover to an otherwise indefensible defense, Equifax had to purposely adopt a reading of § 1681g that contravened the clear objective and instruction of the statute.

40. To achieve its purpose of adopting an interpretation of § 1681g that gave it cover and/or plausible denial, Equifax reads in an accuracy obligation in § 1681g where there is absolutely no language to support such reading.

41. Specifically, while the statue clearly reads "All information in the consumer's file at the time of the request" must be "clearly and accurately disclose[d] to the consumer," § 1681g(a)(1)(A), Equifax claims that § 1681g only covers inaccurate information.

42. The Supreme Court has instructed that entities governed by FCRA to steer away from interpretations of the FCRA that have no foundation based

in the language of the statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

43. There is no language in § 1681g to support Equifax's interpretation that § 1681g governs only information that is inaccurate.

44. Further, the Supreme Court has instructed anyone governed by the FCRA to heed the warnings and/or holdings of the circuit courts of appeals when it comes to interpreting duties under the FCRA. And the Second Circuit stated, albeit in an unpublished opinion, that "§ 1681g requires consumer reporting agencies to 'clearly and accurately disclose ... [*a*]*ll* information,' not *all accurate information*." *Selvam v. Experian Information Solutions, Inc.*, 651 Fed. Appx. 29, 33 (2d Cir. 2016) (citing 15 U.S.C. § 1681g(a) (emphasis in original).

45. The *Selvam* opinion was rendered in 2016, so Equifax has been on notice, from the Second Circuit, that its interpretation of section 1681g(a) was inaccurate for nearly 10 years.

46. Additionally, during that same period, in 2015, Equifax was sued by 30+ state attorney generals for, among other things, failing to report the original creditor. More particularly, as a result of the state attorneys' litigation, Equifax agreed to "revise training materials and adopt policies and procedures to notify and instruct Collection Furnishers that the name

of the Original Creditor … [is a] mandatory reporting requirement[], and [Equifax] shall reject data that is not provided with the name of the Original Creditor."[1]

47. Moreover, Equifax has *direct* knowledge that its decision to omit the identity of original creditors when reporting a collection account is causing serious harm to consumers. In a recent lawsuit in the Middle District of Florida, Equifax admitted that its failure to report the name of the original creditor in collection accounts has led to "numerous other lawsuits filed against Equifax." *Clarke v. Equifax Information Services, LLC*, No. 8:25-cv-01499-JSM-AAS, ECF No. 20, fn. 1 (M.D. Fla. Oct. 1, 2025) (citing *Aguirre v. Equifax Information Services LLC*, 0:25-cv-61099-AHS (S.D. Fla. June 3, 2025); *Roberts El v. Equifax Information Services LLC*, 8:25-cv-01930-JRR (D. Md. June 16, 2025); *Madaris v. Equifax Information Services LLC et al.*, Case No. 1:25-cv-00503-JPH-SKB (S.D. Ohio June 17, 2025).

48. And based on a review of Pacer for cases filed against Equifax, consumers have been suing Equifax for failing to report the original creditor for several years now.

---

[1] https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx

49. Considering Equifax has not corrected this error after being sued by consumers for many years, the costs of litigating these lawsuits for Equifax have not been sufficient enough to deter it from continuing to violate the FCRA.

50. Therefore, a substantial punitive damages award is in tow to be levied against Equifax so that Equifax is actually deterred from violating the FCRA in the future.

51. Specifically, with respect to the accounts at issue identified above, Defendants failed to clearly and accurately disclose the full account numbers and account identifiers associated with those accounts. Instead, Defendant disclosed only partial account numbers and identifiers, while withholding, truncating, or omitting the remaining digits and characters.

52. Defendants further displayed asterisk marks in place of the undisclosed portions, indicating that additional information existed but was not provided.

53. Upon information and belief, Defendants maintained additional digits and full account identifiers for these accounts but did not disclose them. As a result, Plaintiff was unable to match the disclosed accounts to his own records or verify the accuracy and completeness of the information contained in his file.

54. Upon information and belief, Defendants, in disclosures issued in or around the 1990s, provided consumers with more than four digits of account numbers and account identifiers in response to requests for consumer file disclosures and consumer reports and therefore shall be disclosed within the "file".

55. Defendants was therefore capable of providing more complete account identifiers at the time of Plaintiff's request.

56. This capability is further demonstrated by the fact that other consumer reporting agencies, including TransUnion, Equifax and Experian, provide more than four digits of account numbers and account identifiers when consumers request disclosures through the centralized source, AnnualCreditReport.com.

57. Defendants further failed to clearly and accurately disclose the account status, payment history, recent payment, monthly payment, terms, date of last activity, scheduled payment amount, actual payment amount, and activity designator. The defendant also failed to disclose the identity of the original creditor, the original creditor's name and identifying information are missing or omitted.

58. Upon information and belief, Defendants possessed and maintained the capability, through its systems, data repositories, and furnishing

relationships, to disclose additional account-level information for the accounts at issue, including but not limited to the date of last activity, scheduled payment amount, payment history, recent payment, monthly payment, terms, payment history, actual payment amount, date of last payment, amount past due, charge-off amount, date closed, and original creditor information.

59. This capability is demonstrated by Defendant's own prior consumer disclosures and consumer reports furnished to third parties, in which such information has been included for other accounts.

60. Equifax didn't disclosure the name of the original creditor with Jefferson Capital LLC again the information is capable of being reported and does exist but its omitted on the Equifax file.

61. Although this account is reported as a student loan, the original creditor's name and identifying information are missing or omitted.

62. Despite this capability, Defendant's failed to include this information in Plaintiff's consumer file disclosure for the accounts at issue.

63. The omission of these data fields rendered the disclosure incomplete, unclear, and inaccurate, and prevented Plaintiff from understanding, verifying, and evaluating the accuracy of the information contained in his file, in violation of 15 U.S.C. § 1681g(a)(1).

64. Upon information and belief, the furnishers of the accounts at issue provided Defendants with full and complete account numbers, or more than what was shown thereof, as well as additional account-level information, including but not limited to the date of last activity, scheduled payment amount, actual payment amount, payment history, date of last payment, amount past due, charge-off amount, date closed, and original creditor information.

65. Upon further information and belief, Defendant maintained this information within its systems, regardless of where the information was stored, at the time of Plaintiff's request for a consumer file disclosure.

66. Despite possessing this information, or having the capability to do so, Defendants, as a matter of its practices, systems, and procedures, truncated, suppressed, or omitted such information from Plaintiff's disclosure.

67. Alternatively, Defendants failed to maintain and implement reasonable procedures, policies, and systems requiring furnishers to provide complete, accurate, and non-omitted account information. Such procedures were necessary to ensure that Defendants could clearly and accurately disclose all information in a consumer's file upon request.

68. Defendant's failure to require and obtain complete information from furnishers placed it in a position where it could not, and did not, provide a clear and accurate disclosure to Plaintiff.

69. The information Plaintiff alleges was incomplete, truncated, omitted, or not clearly and accurately disclosed is not merely internal or technical data. Rather, it consists of material account-level information necessary for consumers to identify the accounts reported, match those accounts to their own records, detect inaccuracies, and meaningfully verify the completeness and accuracy of the information in their files. Without this information, consumers such as Plaintiff are presented with a distorted and incomplete picture of their consumer file.

70. This impairs their ability to utilize the dispute and reinvestigation procedures set forth under 15 U.S.C. § 1681i and undermines the core purpose of 15 U.S.C. § 1681g(a)(1), which is to ensure that consumers can review and correct their information before it is disseminated to third parties. As a result, Defendant's failure to provide this information violated Plaintiff's right to a clear and accurate disclosure.

71. The actual payment amount allows consumers to determine whether payments were properly credited and whether balances reflect true financial activity. The date of last payment enables consumers to verify

regency of activity, confirm whether an account was brought current, and assess whether reported delinquencies are valid.

72. Complete payment history constitutes materially important information that must be disclosed to consumers under 15 U.S.C. § 1681g(a)(1) because it allows a consumer to determine whether an account was active, whether payments were made or missed, whether delinquency exists, and whether the reported tradeline accurately reflects the consumer's financial activity.

73. Defendant the Date of Last Activity field is used for different purposes within Equifax's file. For one credit account, it discloses the positive credit history of a current payment while negative credit account it discloses the negative event of delinquency, Equifax omitted the Date of Last Activity field on several accounts, Plaintiff can't identify nor dispute the information correctly.

74. Defendant the Date of First Delinquency reflects when an account initially became delinquent and controls the FCRA reporting period, while the Date Major Delinquency First Reported merely reflects when Equifax was notified of serious delinquency. Withholding either prevents consumers, including Plaintiff, from determining whether adverse information is being reported lawfully.

75. By omitting these material data fields and leaving critical account information blank, truncated, or otherwise undisclosed, including failing to provide full account numbers or additional account identifiers beyond what was shown, Defendants deprived Plaintiff of the ability to determine whether the reported accounts pertained to transactions he conducted or accounts he actually maintained, identify the source from which the alleged debts originated, and cross reference the reported information with his own records.

76. This field is critical because it informs consumers, including Plaintiff, how the account is being characterized within their consumer file and how it's being sold to third parties. Without a clear and accurate disclosure of the data fields, consumers cannot determine whether the reporting reflects the true condition of the account or whether the tradeline is being inaccurately characterized.

77. Plaintiff obtained his consumer file through AnnualCreditReport.com, the centralized source mandated by Congress. Pursuant to 12 C.F.R. § 1022.136 (seehttps://www.consumerfinance.gov/rules-policy/regulations/1022/136/#d), All Defendants is required to provide files from these affiliated entities when a consumer requests a report

through the central source, Defendants failed to provide its affiliated file/disclosures what so ever when Plaintiff made the request through the central source. Cortez v. Trans Union, L.L.C., 617 F.3d 688 (3d Cir. 2010) Id. at 711 (CRA may not evade disclosure requirements by "contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file"); Ramirez v. Trans Union, L.L.C., 2017 WL 1133161 (N.D. Cal. Mar. 27, 2017) (following Cortez), aff'd, 951 F.3d 1008 (9th Cir. 2020), rev'd on other grounds, ___ U.S. ___, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021) (reversing for failure to establish Article III standing); Jones v. Equifax, Inc., 2015 WL 5092514, at *2 (E.D. Va. Aug. 27, 2015) (quoting Cortez).

## STATUTORY FRAMEWORK

78. The FCRA allows the consumer to check the accuracy of the information possessed by a consumer reporting agency by requiring that every consumer reporting agency shall, upon request, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a)(1).

79. Congress **imposes two independent requirements** on consumer reporting agencies: that consumer disclosures be made clearly and that they be made

accurately, so that consumers may fully understand the contents of their files.

80. This allows consumers to compare the disclosed information with their own records, identify any inaccuracies, and correct them before the information is disclosed to third parties.

81. A consumer reporting agency that provides a disclosure that is neither clear nor accurate, and that omits pertinent information required to ensure the consumer can identify, understand, and verify the contents of their file, violates its obligations under the Fair Credit Reporting Act and fails to provide a clear and accurate disclosure.

82. Webster's Third New International Dictionary (3d ed.1986), defines "clearly" as: "(1) in a clear manner (that which is and distinctly conceived as the truth); (2) of something asserted or observed: without doubt or question." "Accurately" is defined "in an accurate manner.

## ACTUAL DAMAGES

83. As a result of Defendant's failure to clearly and accurately disclose all information contained in Plaintiff's consumer file at the time of plaintiff's request, Plaintiff expended significant time attempting to interpret and understand a materially incomplete and misleading disclosure.

84. The disclosure contained omitted, missing, inaccurate, unclear, and incomplete information, as described throughout this Complaint, which rendered it unusable for meaningful review and comparison with plaintiff's own records.

85. Because of these deficiencies, plaintiff was required to review the disclosure multiple times and attempt to match the incomplete information with plaintiff's personal records without success.

86. This resulted in additional confusion and frustration and further exacerbated Plaintiff's emotional distress, as plaintiff was forced to spend time attempting to interpret an inadequate disclosure, only to realize that Plaintiff had not been provided with the information Defendants represented Plaintiff was entitled to receive.

87. Defendant's omissions materially hindered Plaintiff's ability to meaningfully review and dispute inaccurate information as contemplated by 15 U.S.C. § 1681i.

88. Had Defendants clearly and accurately disclosed all information that Plaintiff alleges in this Complaint was incomplete, omitted, truncated, or not clearly and accurately disclosed, Plaintiff would have been able to compare the reported data with his personal records, identify inaccuracies, and submit precise and effective disputes.

89. Defendant's failure to do so deprived Plaintiff of that opportunity and resulted in concrete informational harm.

90. Defendant's failure to clearly and accurately disclose all information in Plaintiff's file was the direct and proximate cause of Plaintiff's harm. Specifically, Plaintiff was required to expend time attempting to interpret an incomplete and confusing disclosure and was unable to verify the accuracy of the reported information. This deprivation of information caused Plaintiff to waste time and resulted in ongoing frustration, anger, and emotional distress.

## WILLFUL VIOLATIONS OF THE FCRA

91. Defendant's violations of the Fair Credit Reporting Act were willful.

92. Defendant's knew or should have known that 15 U.S.C. § 1681g(a)(1) requires a consumer reporting agency to clearly and accurately disclose all information in a consumer's file upon request. Despite this obligation, Defendants maintained and implemented policies, practices, and procedures that resulted in the truncation, suppression, and omission of material account-level information from consumers disclosure including Plaintiff's consumer disclosure.

93. Upon information and belief, Defendants has long possessed the capability, through its systems, data repositories, and furnishing relationships, to disclose complete account identifiers and full account-level data, including original creditor information and other material fields. Despite this capability, Defendants, as a matter of practice, policy, and procedure, routinely fails to disclose such information to consumers in their file disclosures.

94. Upon further information and belief, Defendants has been the subject of prior regulatory scrutiny and agreements with state attorneys general concerning its disclosure practices, including the obligation to provide sufficient information for consumers to identify and understand the accounts reported, including original creditor information.

95. Notwithstanding such notice, Defendants continues, as a matter of policy and procedure, to omit or suppress this information from consumer disclosures.

96. Upon further information and belief, Defendants has been the subject of prior regulatory scrutiny and agreements with state attorneys general concerning its disclosure practices. In addition, prior guidance issued by the Federal Trade Commission has addressed the requirement that consumer reporting agencies provide complete and meaningful disclosures

sufficient to allow consumers to identify and understand the information in their files.

97. Despite such guidance, Defendants continues, as a matter of policy and procedure, to omit or suppress material information, including full account identifiers and original creditor information, from consumer disclosures.

98. Defendant's conduct was not the result of mere oversight or isolated error, but rather reflects a deliberate and systemic practice of providing disclosures that are incomplete, unclear, and inaccurate.

99. In doing so, Defendants acted in reckless disregard of its statutory duties and engaged in conduct that created an unjustifiably high risk of violating Plaintiff's rights under the Fair Credit Reporting Act.

**CAUSES OF ACTION**

100. This suit is based upon the Defendants' violations of the Fair Credit Reporting Act.

101. All causes of action were the producing causes of damages, which Roberts suffered.

**FIRST CLAIM FOR RELIEF**
**15 U.S.C. § 1681g**

102. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

103. Defendants violated the FCRA.

104. Defendants' violations include, but are not limited to, the following:

Defendants violated 15 U.S.C. § 1681g by failing to clearly and accurately disclose all of the information in Plaintiff's consumer file at the time of the request.

Defendants violated 15 U.S.C. § 1681g(a)(2) by failing to clearly and accurately disclose the source of the information in Plaintiff's consumer file at the time of the request.

105. Equifax's conduct in violating the FCRA was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n.

106. In the alternative, they were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

**JURY DEMAND AND PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Terrell Roberts respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendants Equifax Information Services, LLC, for the following:

a. Judgment that Defendants violated the FCRA;

b. Actual or Statutory damages pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;

c. Punitive and/or statutory damages pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;

d. Attorney's Fees, Costs, and Expenses incurred in this action pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;

e. For such other and further relief as the Court may deem just and proper.

ATTACHED EXHIBIT LIST

1. Mr. Roberts' Equifax Consumer Disclosure, March 16, 2025.
2. Ohio Attorney General Settlement Agreement.

Respectfully submitted:

s/ Nkem A. House

Nkem A. House, OBA #21219
House Law Group
425 W. Wilshire Blvd., Ste. E
Oklahoma City, OK 73116
405.633.1709 (telephone)
houselawfirm@gmail.com (email)
ATTORNEY FOR PLAINTIFF